**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| ALDA CABRERA, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DYNAMIC RECOVERY SOLUTIONS, LLC, JEFFERSON CAPITAL SYSTEMS, LLC and JOHN DOES 1-25,<br><br>　　　　　Defendant(s). | Case No. 8:18-cv-2900-MSS-TGW |

**PLAINTIFF ALDA CABRERA'S
MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PURSUANT TO
FED R. CIV. P. 12(b)(1) & FED R. CIV. P. 12(b)(6)**

Dated: February 11, 2019

/s/ Justin Zeig
Justin Zeig, Esq.
Zeig Law Firm, LLC
3475 Sheridan St, Ste 310
Hollywood, FL 33021
Phone (754) 217-3084
Fax (954) 272-7807
justin@zeiglawfirm.com
*Attorney for Plaintiff*

## I. PRELIMINARY STATEMENT

Plaintiff Alda Cabrera ("Ms. Cabrera") respectfully submits this Memorandum of Law in opposition to the motion for dismissal pursuant to Rules 12(b)(1) and 12(b)(6) (the "Motion") (ECF 9) filed by Defendants Dynamic Recovery Solutions, LLC ("Defendant Dynamic") and Jefferson Capital Systems, LLC ("Defendant Jefferson") (collectively "Defendants"). By way of the Motion, Defendants seek to dismiss Ms. Cabrera's Complaint summarily. As set forth in detail below, there is no basis for the Motion and Defendants' Motion to Dismiss should be denied in its entirety.

## II. STATEMENT OF FACTS

On November 28, 2018, Ms. Cabrera filed a putative class-action complaint (the "Complaint") (ECF 1) against Defendants setting forth two counts alleging abusive, deceptive, misleading, and unfair debt collection practices in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* (the "FDCPA").

Defendants' Letter offered Ms. Cabrera several settlement options to satisfy an alleged debt of $983.10, for less than the alleged full amount owed on her account. Complt. ¶ 32. Option Three offered her the option of settling the account in full for $540.71, payable in four payments of $135.18 each. Complt. ¶ 32c, see also Letter attached to the Complaint as Ex A. This third payment option was confusing and misleading to Ms. Cabrera (and to any least sophisticated who received a similar letter from Defendants). Complt. ¶ 33. Specifically, Defendants' Letter offered Ms. Cabrera a purported settlement amount of $540.71. However, should Ms. Cabrera have accepted this offer, she would have remitted four payments each of $135.18 for an actual, total amount paid of $540.72 – thereby rendering Defendants' Option Three settlement offer false and deceptive under §§1692e and 1692f of the FDCPA. Complt. ¶¶ 35-36.

Ms. Cabrera further alleges that, in calculating and drafting these settlement options, Defendants strategically determined the amount of each offer with full knowledge that the offer was misleading and was an intentional and deceptive attempt to collect more from Ms. Cabrera than the amount she believed she would be paying. Complt. ¶ 34. Defendants contend that their intentional and deceptive attempt to collect a mere $.01 more from the consumer was *de minimus* and the result of a "rounding tactic" used in all collection software programs. However, Defendants' conduct was intentional and strategically created to appear *de minimus* with the belief that the least sophisticated consumer would fail to notice this discrepancy, instead concentrating only on Defendants' unfair enticement to settle the debt for an amount less than the alleged full amount of the debt. Complt. ¶ 37.

No matter their excuses, Defendants' Letter was deceptive and intentionally sought to collect more from Ms. Cabrera than the purported amount of their settlement offer. There can be no dispute that the Letter was false. Such a falsity constitutes an informational injury which, this Circuit has held, constitutes an injury-in fact thereby conveying Article III standing upon a consumer as it applies to the FDCPA. Additionally, Ms. Cabrera has sufficiently pled that Defendants' Letter was strategically drafted to mislead the consumer to pay more than she believed she was paying. To that end, the letter speaks for itself. When viewed in aggregate over a class of consumers, Defendants' intentionally false and misleading Letter leads to a windfall gain of deceptively collected funds from unsuspecting consumers. Complt. ¶ 40. This is exactly the type of behavior Congress sought to curtail when implementing the FDCPA. Accordingly, Defendants' Motion must be denied in its entirety.

### III. STANDARD OF LAW

#### A. JURISDICITIONAL CHALLEGES UNDER RULE 12(b)(1)

Under Article III of the U.S. Constitution, a plaintiff seeking to establish standing to sue must demonstrate: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) the likelihood that the injury will be redressed by a favorable decision." *Albu v. Home Depot, Inc.*, 2016 U.S. Dist. LEXIS 185557 at *11 (N.D.Ga. Nov. 2, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 2136 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

Here, as in *Spokeo*, the particular component of standing at issue is injury-in-fact. To allege injury in fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations omitted). A harm is "concrete" only if it is "*de facto*"; that is, it must actually exist"; it cannot be merely "abstract." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

However, a harm need not be tangible to be "concrete." Whether an intangible harm rises to the level of injury-in-fact depends on historical practice and Congressional judgment. *Spokeo*, 136 S. Ct. at 1549. Specifically, courts should look to (a) whether the 'alleged intangible harm' is closely related: to a harm traditionally recognized by law, and (b) whether congress has elevated it to the status of a legally cognizable, redressable injury. *Hossfield v. Compass Bank*, 2017 U.S. Dist. LEXIS 182571 at *17 (N.D.Al. Nov. 3, 2017). "In other words, a bare violation of a procedural right granted by statute is not inherently injurious; to constitute

4

an injury-in-fact, such a violation must result in a concrete harm. *Gesten v. Burger King Corp.*, 2017 U.S. Dist. LEXIS 158173 (S.D.Fl. Sept. 13, 2017).

To establish injury-in-fact for an FDCPA violation no economic injury is required. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 640 n.24 (3d Cir. 2017) (citing *Robey v. Shapiro, Marianos & Cejda, LLC*, 434 F.3d 1208, 1211-12 (10th Cir. 2006) (holding that a violation of the FDCPA in the form of an unlawful demand for attorney's fees – even where the fees are not actually paid and so no economic injury was inflicted – is a cognizable injury for Article III standing). The clearly established test for standing is simply whether a defendant's conduct constitutes a concrete and particularized injury. For an injury to be particularized, it must "affect the plaintiff in a personal and individual way." *Spokeo*, 136 S.Ct. at 1548. To establish a "concrete" injury, said injury need not be "tangible," and intangible injuries, <u>such as informational injuries</u>, can also be concrete injuries sufficient to confer standing. *Id.* at 1549 (emphasis added). \

In *Church v. Accretive Health, Inc.*, the Eleventh Circuit construed *Spokeo* as it applies to violations of the FDCPA. 654 Fed. App'x 990, 992-95 (11th Cir. 2016). In *Church*, a hospital management company sent the plaintiff a debt collection letter that did not contain all the FDCPA's required disclosures. *Id.* at 994. The plaintiff alleged this failure to disclose caused injury to her statutorily-created right to information under the FDCPA. *Id.* In analyzing whether this alleged injury satisfied the injury-in-fact element of standing, the Eleventh Circuit stated that Congress, by enacting he FDCPA, created a substantive right to receive the required disclosures in relevant communications, which the defendant violated. *Id*. at 994-95. ("[T]hrough the FDCPA, Congress has created a new right – the right to receive the required disclosures in communications governed by the FDCPA – and a new injury – not receiving such disclosures."). Regarding the concreteness of the plaintiff's injury, the Eleventh Circuit reasoned:

5

> The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled. While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete. *See Spokeo, Inc.*, 578 U.S. at, 136 S.Ct. at 1549; *Havens Realty Corp.*, 455 U.S. at 373. Rather, this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA.

*Id.* at 995. Accordingly, the Eleventh Circuit concluded that the plaintiff alleged a sufficiently concrete injury to confer standing even though the alleged statutory violation resulted in no tangible economic damages. *Id.*

### B. MOTIONS TO DISMISS UNDER RULE 12(b)(6)

In considering a motion to dismiss under *Fed. R. Civ. P. 12(b)(6),* courts are required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 375 (3d Cir. 2002)*). See also *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563 (2007). Facts stated in a complaint must be sufficiently pleaded so as to state a claim of relief beyond a speculative level. *Bendy v. Ocean County Jail*, 341 Fed. Appx. 799, 801, (3d Cir. N.J. 2009). See also *Gattis v. Phelps,* 344 Fed. Appx. 801, 803, (3d Cir. Del. 2009); *Colburn v. Upper Darby Township,* 838 F.2d 663, 665, (3d Cir. Pa. 1988).

In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled

6

to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009). A plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" of the cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

      **C.**     **THE LEAST SOPHISTICATED CONSUMER STANDARD**

The Eleventh Circuit has adopted the "least sophisticated consumer" standard as to the question of whether a communication complies with the FDCPA. *Greene v. Douglas, Knight & Assocs.* (In re Cheaves), 439 B.R. 220 (M.D.Fl B.C., Nov. 8, 2010); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985). "The basic purpose of the least-sophisticated consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer protection law." *Id*. (citing *Clomon v. Jackson*, 998 F.2d 1314, 1318 (2d Cir. 1993). "However while the least sophisticated debtor standard protects naïve consumers, 'it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness…" *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010). This objective standard serves a "dual purpose: it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Clomon*, 988 F.2d at 1320.

**IV.**     **LEGAL ARGUMENT**

      **A.**     **THE COMPLAINT ESTABLISHES SUBJECT MATTER JURISDICTION AND CANNOT BE SUMMARILY DISPOSED**

In support of its position that Ms. Cabrera lacks standing to bring this action, Defendants' motion relies on an analysis by the Sixth Circuit in *Hagy v. Demers & Adams*, 882 F.3d 616 (6th

7

Cir. 2016). However, this case is presented in a misleading fashion and a more holistic approach to *Spokeo* is found in *Macy v. GC Servs. LP,* 897 F.3d 747 (6th Cir. 2018). In *Macy*, the plaintiff alleged that an initial dunning letter was deficient because it failed to inform the plaintiff that the defendant was obligated to provide the additional debt and creditor information only if plaintiff disputed their debts in writing, thus failing to inform the consumer of her rights pursuant to § 1692g. *Id.* at 751. The *Macy* court found that the consumer plaintiffs demonstrated a sufficient risk of real harm to their underlying interest to establish a concrete injury without the need to allege any additional harm beyond the one Congress had identified. The Court further concluded that without the information required by § 1692g, the consumers were placed at a materially greater risk of falling victim to abusive debt collection practices, precisely the type of harm the statute was designed to prevent. *Id.* at 758. "GC's letter presents a risk of harm to the FDCPA's goal of ensuring that consumers are free from deceptive debt-collection practices because the letters provide misleading information about the manner in which the consumer can exercise the consumer's statutory right to obtain verification of the debt or information regarding the original creditor." *Id.* at 757. "To that end, the FDCPA grants a private right of action to a consumer who receives a defective communication." *Id.* at 758.

The *Macy* court distinguished *Hagy* because the plaintiffs in *Hagy* did not allege any risk of harm, and as such, the court did not conduct a risk-of-harm analysis. *See Macy*, at 761. On the other hand, "[w]here Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient 'risk of real harm' to the underlying interest to establish concrete injury without 'need [to] allege any *additional* harm beyond the one Congress has identified. *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016) (*citing Spokeo*, 136 S.Ct. at 1449). Thus, including a false, deceptive or misleading statement in a debt-

collection communication may cause an individual "to lose the very … rights that the law affords him." *Strubel*, 842 F.3d at 190. This presents a real risk of harm sufficient for standing.

Of note, "every circuit court to address similar post-Spokeo FDCPA standing issues has rejected defendant's standing challenges." *Byrne v. Or. One, Inc.*, 2017 U.S. Dist. LEXIS 132538, at *8-9 (D.Or. 2017). *See, e.g. Papetti v. Does,* 2017 U.S. App. LEXIS 9165, at *3-4 (2d Cir. 2017) (rejecting the defendant's misinterpretation of Spokeo and finding "there can be no dispute that Sections 1692e and g of the FDCPA 'protect an individual's concrete interests'"); *Sayles v. Advanced Recovery Sys., Inc.*, 206 F.Supp. 3d 1210, (S.D. Miss. Aug. 26, 2016) ("Congress intended [§1692e(8)] of the FDCPA to address the dissemination of false information and abusive practices employed by debt collectors") *aff'd* at *Sayles v. Advanced Recovery Sys.*, 865 F.3d 246, 250 (5th Cir. 2017); *Ben-Davies v. Blibaum * Assocs.*, 695 Fed. Appx. 674, 676 (4th Cir. 2017) (finding Article III standing for FDCPA claim where the defendant demanded payment of an incorrect sum based on the calculation of an incorrect interest rate); *Church v. Accretive Health, Inc.*, 654 F. App'x at 995 (finding that plaintiff sufficiently alleged a concrete informational injury because she did not receive the required FDCPA disclosure); *Garland v. Wells Fargo Home Mortg. Inc.*, 303 F.Supp. 554, 560 (E.D.Mich. 2018) (finding standing when defendant demanded a sum different from and greater than the sum owed); *Johnson v. Enhanced Recovery Co., LLC*, 325 F.R.D. 608 (N.D. Ind. 2018) (finding standing for a letter that falsely represented that payment would avoid credit reporting).

The weight of current court decisions supports the fact that Ms. Cabrera maintains Article III standing here as Defendants' intentional misstatement, falsely and deceptively attempting to collect more than the amount offered, was a real risk of harm. Ms. Cabrera was placed at a materially greater risk of falling victim to abusive debt collection practices. Furthermore, the

false information in Defendants' Letter imposed an informational injury upon Ms. Cabrera by enticing her to accept a settlement offer, which amount, if paid, would amount to more than the amount offered in Defendants' Letter. Ms. Cabrera sustained an injury in fact as contemplated by the majority of courts in this country and Defendants' motion under Rule 12(b)(1) fails.

>     B.    **THE COMPLAINT SETS FORTH A PLAUSIBLE CLAIM FOR RELIEF UNDER §1692e and §1692f OF THE FDCPA AND CANNOT BE SUMMARILY DISMISSED**

As stated, *supra,* Defendants' violations stem from a December 13, 2017 collection letter sent by Defendant Dynamic to Ms. Cabrera on behalf of Defendant Jefferson. Defendants' Letter offered Plaintiff several settlement options. The specific portion of the Letter that violates the FDCPA lies in Option 3 which states:

> You may resolve your account for $540.71 in 4 payments starting on January 27, 2018. To comply with this offer, payments should be no more than 30 days apart. We are not obligated to renew this offer. Upon receipt and clearance of these four payments of $135.18, this account will be considered satisfied and closed, and a satisfaction letter will be issued.

This offer constitutes, without question, a false and misleading statement to the consumer. Specifically, it appears to offer Ms. Cabrera the option to settle his alleged debt for the total amount of $540.71. In reality, Defendants are actually charging Ms. Cabrera $540.72 to settle the debt, as the required four payments of $135.18 each total more than Defendants' offer states. Moreover, it was a deliberate attempt by Defendants to deceptively entice Ms. Cabrera to accept what appears to be one specific amount when, in truth, she would be paying more than the amount Defendants' purportedly proposed in their Letter.

Defendants respond that the $.01 difference between the settlement offer and the amount which would actually be paid by Ms. Cabrera is (1) the result of a rounding error contained in

Defendants' collection software and (2) a *de minimus* discrepancy in payment amounts and, therefore, does not violate the FDCPA. Defendants are mistaken.

Debts that are misstated by relatively small amounts have been found to violate §1692e of the FDCPA. In *Sunga v. Rees Broome, P.C.,* 2010 U.S. Dist. LEXIS 81970 (E.D.Va Aug 12, 2010), the court upheld the plaintiff's §1692e claim, denying the debt collector's motion to dismiss, where the debt collector improperly added an interest payment of $2.57, rather than the correct amount of $1.16, finding plaintiff's allegations "sufficient to support a claim that Defendant falsely misrepresented the amount Plaintiff owed." *Id.* at *11. In *Gorman v. Messerli & Kramer, P.A.*, 2016 U.S. Dist. LEXIS 23474 (D. Minn. Feb. 25, 2016), the court upheld the plaintiff's claims for alleged violations of §§ 1692e and 1692f where the debt collector added an impermissible $35.00 fee to plaintiff's amount owed.

Further, in addressing the issue of materiality, the *Gorman* court stated "a debt collector's false statements in a dunning letter asserting that a debtor owes an amount the debt collector is unauthorized to collect should almost always be considered material because of the FDCPA's stated aim to halt 'the abusive, deceptive and unfair debt collection practices by many debt collectors.'" *Id.* at *14 (quoting 15 U.S.C. §1692(a).) The FDCPA is a strict liability statute which "imposes liability without proof of an intentional violation." *See Reich v. Van Ru Credit Corp.*, 191 F.Supp. 3d 668, 672 (E.D.Tx., June 8, 2016) (*quoting Glover v. F.D.I.C.*, 698 F.3d 139, 149 (3d Cir. 2012).

Finally, Ms. Cabrera seeks class certification here because, when viewed in aggregate over a class of consumers who received this or a similar letter from Defendants, Defendants' unauthorized collections lead to potentially exorbitant amounts illegally charged and profited from by Defendants. **"Congress's goal was not to grant a remedy to each debtor deprived of**

**$35, but instead to deter debt collectors from denying entire classes of debtors, *en masse*, of relatively small sums of money – such as $35."** *Gorman*, 2016 U.S. Dist. LEXIS 23474 at *14 *(emphasis added).* The *Gorman* court's holding highlights the importance of denying Defendant's motion request in the present case.  For, a support of Defendants' contention that Plaintiff's claims are *de minimus* would undermine the sole purpose of the FDCPA – to protect an entire consumer class from debt collectors' attempts to take advantage of a consumer's naivety, however seemingly innocuous. Further, by permitting a debt collector's, arguably minor, deceptive settlement offers, the court would be ignoring the fact that the Defendants' impermissible imposition of even a single penny above the amount the consumer believes he is paying, can amount to thousands, if not millions, when paid by the potential number of consumers who unknowingly paid this false settlement amount. Accordingly, Defendants' argument that this was a simple rounding error and is *de minimus*, is anything but. Allowing Defendants to overcharge a consumer because, in this case, it is only by a penny would create court authority for small overcharges, in direct contradiction of the law.

At this stage of litigation, a motion to dismiss is improper and Plaintiff is entitled to conduct discovery as to the size of the potential class who received this misleading and deceptive letter.

        D.      **<u>DEFENDANTS' PROFFERED CASE LAW IS NOT DISPOSITIVE HERE AND SHOULD NOT BE ADOPTED BY THIS COURT</u>**

In support of their motion to dismiss, Defendants cite to three cases which are either distinguishable from the facts of Ms. Cabrera's and/or not precedential in the Middle District of Florida.

Specifically, Defendants rely on the rulings in *Matuszczak v. Miramed Revenue Group, LLC*, 2017 WL 5467117 (N.D.Ind. Nov. 13, 2017) and *Akoundi v. FMS, Inc.*, 2014 WL 3632008

(S.D.N.Y Jul. 22, 2014). Neither decision is binding on this court. Moreover, substantively, the facts of these cases are distinguishable from those of Ms. Cabrera's and, while the distinction is subtle, it is significant. The plaintiffs in both *Matuszczak* and *Akoundi* received settlement offers from the defendant debt collectors. In *Matuszczak*, a representative for the debt collector offered the plaintiff the following settlement option: plaintiff could settle the debt at a 20% discount for the specific amount of $2,796.00.  The plaintiff alleged this was a violation of the FDCPA because 20% of the full amount of the debt actually amounted to $2,795.55. The facts in *Akoundi* are parallel to those in *Matuszczak*. In *Akoundi*, the plaintiff was offered the following settlement option: plaintiff could settle the debt for 25% of the balance for the specific amount of $1,711.57. Again, the plaintiff here alleged violations of the FDCPA because 25% of the full balance of the debt amounted to $1,711.56. Both of these cases were dismissed by the courts finding these plaintiffs had failed to state a viable claim under the FDCPA.

The subtle difference between the settlement offers made in the *Matuszczak* and *Akoundi* cases and Ms. Cabrera's case is significant. In *Matuszczak* and *Akoundi*, both defendant debt collectors offered to settle the plaintiffs' debts for a percentage of the full amount allegedly owed. In both cases the debt collectors stated the relevant percentage, calculated same, and proposed an exact amount which the plaintiffs could pay to satisfy the debt. The proposed settlement amount stated by the debt collector was a fixed numerical amount presented to each plaintiff.  First, it is understandable that a debt collector's computer software may use rounding when calculating a percentage of an amount owed. However, after calculating that percentage amount, the defendant debt collectors in both cases offered the consumer a fixed amount required to satisfy the debt – and these fixed amounts were the true and accurate amounts the plaintiffs could pay to resolve their balances.

This was not so in the offer contained in Ms. Cabrera's Letter. There, the Defendants did initially offer her a set amount allegedly required to satisfy the debt at a reduced settlement rate. <u>But, the amount they represented Ms. Cabrara would be paying in acceptance of that settlement offer was false</u>. Defendants here intentionally attempted to entice Ms. Cabrera to accept what she thought was one amount, while actually offering a payment plan which amounted to a greater amount. Furthermore, a rounding defense is not valid here. For example, Defendants could have easily determined the total settlement amount they wished to offer Ms. Cabrera. Then, when dividing it into the four payments required, they simply could have stated: the first three payments should be for the amount of $135.18 and the fourth payment should be for the amount of $135.17. Not only did Defendants not choose this procedure in calculating their settlement offers, they intentionally and deceptively proposed one amount but then, without disclosure to the consumer, attempted to charge her more. It is this intentionally misleading behavior which differentiates the facts in Ms. Cabrera's case to those referenced by Defendants. The prevention of the use of unfair, deceptive and misleading collections tactics by debt collectors is the reason the FDCPA was enacted. Defendants' actions constitute this type of unacceptable behavior and, for that reason, their motion to dismiss must be denied.

Finally, Ms. Cabrera cannot simply ignore the case of *Brown v. Alltran Financial, LP*, 2018 WL 5923772 (W.D.Wis. Nov. 13, 2018). *Brown* closely parallels the facts of the present matter where the court ultimately dismissed the plaintiff's complaint, finding that an offer differing "by a single cent would [not] be material in making a decision to repay or not repay a debt." *Id.* at *2. Simply put, *Brown* is not controlling law in this district. Just as Defendants have found one case which supports their motion for dismissal, so too has Ms. Cabrera offered compelling case law supporting the true fact that Defendants' Letter did, in fact, violate the

FDCPA. Ms. Cabrera respectfully urges this Court to adopt her position that Defendants' deliberate and misleading debt collection tactics here are hardly *de minimus* or immaterial. Defendants have violated §1692e and § 1692f of the FDCPA and the motion must be denied.

## V.     **CONCLUSION**

Ms. Cabrera has demonstrated that there is a viable cause of action against Defendants for violations of the FDCPA. As a result of these violations, Ms. Cabrera was placed at an imminent risk of falling victim to Defendants' deliberate and deceptive attempts to charge her more than she believed she was paying to settle her account. Additionally, Ms. Cabrera incurred an informational injury as Defendants' Letter falsely alleged she would be paying one specific amount when, in fact, she would be paying more than what was represented in the Letter. As such, Ms. Cabrera has more than met her burden of averring (1) Article III standing to bring this suit and (2) Defendants' violation of §§ 1692e and 1692f of the FDCPA.

For the aforementioned reasons, Ms. Cabrera respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety.

 

                          Respectfully Submitted,

                          **ZEIG LAW FIRM, LLC**
                          *Attorneys for Plaintiff*

Dated: February 11, 2019        */s/ Justin Zeig*
                          Justin Zeig, Esq.
                          3475 Sheridan St, Ste 310
                          Hollywood, FL 33021
                          Phone (754) 272-7807
                          Fax (954) 272-7807
                          justin@zeiglawfirm.com
                          *Attorneys for Plaintiff Alda Cabrera*

## **CERTIFICATION OF SERVICE**

      I, hereby certify that on February 11, 2019 a copy of the foregoing and any attachments hereto were sent via CM/ECF to the following counsel of record:

Dale T. Golden, Esq.

Charles J. McHale, Esq.

Golden Scaz Gagain, PLLC

201 North Armenia Avenue

Tampa, FL 33609

*s/Justin Zeig*
Justin Zeig, Esq.